UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA DeVOOGHT,
JENNIFER PIPER
and DAWN McLEAN,

        Plaintiffs,

vs.

CITY OF WARREN,

        Defendant.
_____/

Case No. 20-CV-10812

HON. GEORGE CARAM STEEH

ORDER DENYING PLAINTIFFS' MOTION TO EXCLUDE EXPERT OPINION AND TESTIMONY OF BRIAN SHOCK (ECF NO. 59) AND DENYING DEFENDANT'S MOTION FOR SANCTIONS (ECF No. 66)

This matter comes before the Court on plaintiffs' motion to preclude defendant from eliciting expert testimony from Brian Shock, and to strike all references to his report and deposition testimony from defendant's brief in support of its motion for summary judgment. Plaintiffs move to exclude Mr. Shock's opinions and testimony under Federal Rule of Evidence 702 because he is not qualified, and his opinions are not "the product of reliable principles and methods." Defendant opposes plaintiffs' motion and filed a motion for sanctions under Federal Rule of Civil Procedure 11(a). For the

reasons stated below, plaintiffs' motion to exclude expert testimony is DENIED and defendant's motion for sanctions is also DENIED.

Mr. Shock provides his opinion on the general process of conducting prisoner searches, utilizing female civilian employees to conduct searches of female prisoners when a female officer is not available, and the lack of a reasonable alternative to Warren Police Department's ("WPD") gender-based dispatcher-search requirement. Mr. Shock evaluated alternative options such as pulling female officers off the road or relying on other local agencies to provide mutual aid to conduct a search, but found them to be impractical, unsafe and unreasonable. Mr. Shock ultimately opined that utilizing the female dispatchers to search female prisoners when a female law enforcement officer is not available is a reasonable solution to ensure the safety and continued operation of the WPD.

I.      **Mr. Shock's Experience and Specialized Knowledge**

Mr. Shock describes the basis of his expertise as his 19 years of law enforcement experience as a sworn officer and his criminal justice education and training. Mr. Shock received a Bachelor of Science degree in Criminal Justice from Upper Iowa University and is a graduate of the Iowa Law Enforcement Academy. He served as an adjunct instructor for Hawkeye Community College and the Iowa Law Enforcement Academy

from 2009 to 2018. He was also an instructor for the Iowa Division of the International Association for Identification from 2010 to 2018.

Mr. Shock worked in law enforcement as a sworn officer from 1999 to 2008. He served as a patrol officer from 1999 to 2005, and in that capacity executed arrests and searched arrestees. Each of the police departments Shock worked for was significantly smaller than WPD, which employs approximately 200 officers. Shock spent a total of 6 years working as a patrol officer for three different agencies in Iowa: Hudson had 4 officers; Evansdale had 12 officers, and Cedar Falls had 44 officers.

From 1999 to 2002 Shock simultaneously served as a deputy sheriff in Black Hawk County, which had 80 to 90 officers. In that position he was assigned to the jail where he was responsible for searching inmates and maintaining procedures for the jail. In 2005, Shock became an investigator in Cedar Falls, where he was responsible for collecting and processing criminal evidence and maintaining records and procedures. From 2008 to 2018 he was the investigator in charge of the crime lab in Cedar Falls. Mr. Shock testified that throughout his career he received training on searches of arrestees, conducted hundreds of searches, and instructed new officers on patrol functions that included searching and transporting prisoners.

## II. Methodology

In arriving at his opinions, Mr. Shock states that he reviewed documentation including policies and general orders of WPD, depositions of plaintiffs and other WPD employees, personnel and procedure documentation of other local law enforcement agencies, the Collective Bargaining Agreement in place, plaintiffs' prior Motion for Summary Judgment, the 2019 FBI Uniform Crime Reporting Table 74, demographic info from other local agencies, and plaintiffs' expert witness opinion. ECF #59-1, PgID 2604-05. Mr. Shock also interviewed Captain Bonett, compiled a questionnaire which was distributed to five local law enforcement agencies, and reviewed the responses of the questionnaires. Shock states that he researched relevant articles and relied on his own experience for reference. Finally, in forming his opinions, Shock considered six factors: (1) Safety, (2) Training, (3) Evidence Chain of Custody, (4) Staffing, (5) Recruiting, (6) Policy and Job Description.

## **LEGAL STANDARD**

An expert witness may only testify where that testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The trial judge is tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at

hand . . . ." *Daubert v. Merrell Dow Pharmaceuticals, Inc*, 509 U.S. 579, 597 (1993). In *Daubert*, the Supreme Court discussed factors that might be helpful in determining the reliability of a particular scientific "theory or technique," such as testing, peer review, error rates, and "acceptability" in the relevant scientific community. *Id*. at 593-94. The trial judge's "gatekeeping" function applies not only to testimony based on scientific knowledge, but to testimony based on "other specialized" knowledge. Fed. R. Evid. 702.

"[T]he test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999). Where non-scientific expert testimony is involved, "the *[Daubert]* factors may be pertinent," or "the relevant reliability concerns may focus upon personal knowledge or experience." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007) (citations omitted).

## ANALYSIS

Plaintiffs contends that Mr. Shock is not qualified to opine as an expert on the question of whether a police department of the size and sophistication of the City of Warren needs to require female dispatchers to perform the hazardous duty of searching prisoners when a female police officer is not available, while never requiring male dispatches to conduct prisoner searches. Here, Mr. Shock's expertise is not scientific, but is based on his education and personal experience.

The admissibility of expert testimony hinges on four factors: 1) a qualified expert, 2) a proper subject, 3) the employment of reliable methods, and 4) the balance of prejudice relative to probative value. *Am. & Foreign Ins. Co. v. Gen. Elec. Co.*, 45 F.3d 135, 137-38 (6th Cir. 1995).

I.  **Shock's Qualifications**

Mr. Shock must be found to be qualified to testify on a topic or topics that "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Mr. Shock's qualifications to testify as to the issues in this case are based on his education, training, and many years of experience in the field of police procedures, including his participation in searching hundreds of prisoners. He also has experience in maintaining jail department policies and instructing new officers. In forming

his opinions, Mr. Shock relied on his own experience, personal review of documentation related to WPD, firsthand interviews, queries of neighboring local agencies, reference to law enforcement statistics, and reference to professional articles.

The Court concludes that Mr. Shock is qualified to testify as to the issues raised in this case. Of course, plaintiffs will have the opportunity to cross-examine Mr. Shock on the strength of his qualifications.

**II.    Reliability of Shock's methodology**

Plaintiffs maintain that Mr. Shock's methodology involves relying on information provided by WPD rather than conducting an independent investigation of facts to form his opinions. For example, he relied on Captain Bonett for his claim that plaintiffs had "a lot of outside training opportunities", rather than looking into the training program for himself. Another example is that Mr. Shock adopted WPD's explanation that its quadrant approach to patrol would be disrupted if female officers were pulled in from the road to perform searches. However, he did not follow up to understand how many quadrants the city maintained in its patrol, or how WPD covers its quadrants when an officer is brought in from the road for another reason.

The Court concludes that Mr. Shock's testimony is reliable since it is derived from his experience and training and relates to specialized subject matter. His testimony could assist the trier of fact in understanding search procedures, the basis for their implementation and the realities of police department and jail operation that may make alternatives to the dispatcher search policy reasonable or not. Again, plaintiffs may cross-examine Mr. Shock on the basis of his knowledge and the details of his professional experience, as well as on the methods he utilized in forming his opinions in this case.

### III.  FRE 403 - More Prejudicial Than Probative

Defendant bears the burden of demonstrating that the BFOQ defense applies. Specifically, Mr. Shock is called upon to testify whether there are reasonable alternatives to the policy of having female dispatchers perform the hazardous duty of conducting prisoner searches because of their gender. Mr. Shock's testimony relates to this issue. Plaintiff's suggestion that Mr. Shock has not conducted his own investigation or does not have relevant experience can be addressed in cross-examination. Plaintiff's arguments go to the weight and credibility of Mr. Shock's testimony, not its admissibility. *See First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 333 (6th Cir. 2001) (citation omitted).

For the reasons stated herein, plaintiffs' motion to exclude Mr. Shock's expert opinion and testimony is DENIED.

## IV. Sanctions

Defendant seeks sanctions under Federal Rule of Civil Procedure 11(b), arguing that plaintiffs' motion to strike and exclude Dr. Shock's expert testimony is not well grounded in fact or law. The Court has considered defendant's arguments and determines that sanctions are not warranted. Defendant's motion for sanctions is DENIED.

## CONCLUSION

IT IS HEREBY ORDERED that plaintiffs' motion to exclude Mr. Shock's expert opinion and testimony (ECF No. 59) is DENIED.

IT IS HEREBY FURTHER ORDERED that defendant's motion for sanctions (ECF No. 66) is DENIED.

Dated: February 8, 2022

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on February 8, 2022, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk